UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **ITASCA IMAGES, LLC**, a Minnesota limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>**E H PUBLISHING, INC. d/b/a EH MEDIA**, a Texas corporation, and **PEERLESS MEDIA, LLC**, a Massachusetts limited liability corporation,<br><br>Defendants. | Case No. _____<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff ITASCA IMAGES, LLC alleges against Defendants:

### INTRODUCTION

1.      This is an action for copyright infringement arising under the Copyright Act. Defendants Peerless Media, LLC and its parent corporation E H Publishing, Inc. repeatedly published Plaintiff's federally registered copyrighted photograph in at least 15 articles in five trade publications. Plaintiff informed Defendants that the photograph was registered with the U.S. Copyright Office, demanding Defendants cease their infringement and remove the copyrighted photograph from their websites. In response, Defendants' Chief Operating Officer falsely stated that Defendants were allowed to use the photograph because they found it on the Internet, further stating that Defendants maintain a general rule that they not respond to copyright infringement matters, hoping that copyright owners simply go away. Defendants refused to remove Plaintiff's photograph, which remains published without license on Defendants' websites, constituting willful copyright infringement.

## PARTIES

2.      Plaintiff ITASCA IMAGES, LLC (hereinafter "Plaintiff") is a Minnesota limited liability company, with its principal place of business in Hennepin County, Minnesota.

3.      Defendant E H PUBLISHING, INC. d/b/a EH MEDIA (hereinafter "EH") is a Texas corporation, with its principal place of business in Middlesex County, Massachusetts. EH describes itself as a media and marketing powerhouse.

4.      Defendant PEERLESS MEDIA, LLC (hereinafter "Peerless") is a Massachusetts limited liability company, with its principal place of business in Middlesex County, Massachusetts.

5.      Defendant Peerless is a division or subsidiary of Defendant EH.

6.      Defendant Peerless and Defendant EH are hereinafter referenced individually and collectively as "Defendants."

## JURISDICTION AND VENUE

7.      This action arises under the Copyright Act, codified at 17 U.S.C. § 101, *et seq.*

8.      This Court has jurisdiction over this action pursuant to 27 U.S.C. § 1331 as a federal question, and original jurisdiction pursuant to 27 U.S.C. § 1338(a) as arising from an Act of Congress relating to copyrights.

9.      This Court has personal jurisdiction over Defendants because Defendants do business within the district, including by way of selling advertising and having print and digital subscribers within Minnesota, some of whom pay subscription fees to have publications delivered to Minnesota, and because Defendants' infringement occurred within this district.

10.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391, as Plaintiff can be found in this district, Defendants do business within this district, a substantial part of the

events or omissions giving rise to the claim occurred within this district, and a substantial part of property that is subject of this action exists within this district.

<u>FACTS</u>

**I.     The Photograph**

11.     Plaintiff is the copyright owner and rights-holder to many photographic images covering current events, urban lifestyle, travel, nature, live theater, sports, and more. Plaintiff is in the business of managing and licensing this body of work. Plaintiffs' images have appeared in various international, regional, local, and trade publications.

12.     Plaintiff is the owner of a photograph of shipping container cranes in a harbor port at sunrise (the "Photograph"), a copy of which appears herein:



13.     The Photograph is registered with the U.S. Copyright Office in accordance with applicable statute under registration number VA 1-929-415 (the "Registration").

14.     A true and correct copy of the Certificate of Registration for the Registration, which includes the Photograph, is attached hereto as **Exhibit A**.

15.     The Registration is a group registration of 628 published photographs, containing contents title identifiers "W14S0001" through "W14S0628." Included within the group is the Photograph at issue, labeled as contents title identifier "W14S0399." This contents title identifier is printed on the application for the Registration, on the deposit submitted to the U.S. Copyright Office along with the registration, and on the certificate for the Registration.

16.     A true and correct copy of the relevant page of the deposit submitted to the U.S. Copyright Office along with the application for Registration is attached hereto as **Exhibit B**.

17.     The Photograph was created on September 26, 2014, though the capture of a visual scene in the United States.

18.     The Photograph is a wholly original visual arts work, and is copyrightable under the laws of the United States.

19.     The Photograph was originally published on or about September 29, 2014.

20.     The Photograph was registered with the U.S. Copyright Office on October 2, 2014, which is the effective date of registration which appears on the Registration certificate.

21.     Because the Photograph was registered within three months of publication, the Registration is considered "timely" as that term is defined pursuant to 17 U.S.C. § 412.

22.     Because the Registration was applied-for and given an effective date within five years of publication of the Photograph, the Registration is prima facie evidence of the validity of the copyright and registration. 17 U.S.C. § 410(c).

23.     On or about May 10, 2017, the creator of the Photograph and applicant for the Registration (the "Photographer") assigned ownership of the Photograph and of the Registration, and all rights and ownership thereunder, to Plaintiff, by written assignment.

## II.     The Defendants

24.     Defendants are in the business of marketing and publication. Defendants own, operate, and manage several industry magazines and websites, and sell advertising for those magazines and websites. Additionally, Defendant EH provides video production, content marketing, content strategy, research, and creative services; and Defendant Peerless provides marketing services, ad creation, lead generation and nurturing, list rental, and research.

25.     Defendants have offices or employees nationwide: in Framingham, Massachusetts; Germantown, Wisconsin; West Chester, Pennsylvania; San Francisco, California; New York, New York; Chandler, Oklahoma; Raleigh, North Carolina; San Diego, California; Denver, Colorado; and Morganville, New Jersey.

26.     Defendants own, operate, and, manage various publications and websites including Logistics Management, Modern Materials Handling, Supply Chain Management Review, Supply Chain 24/7, Material Handling 24/7, and Material Handling Product News (individually and collectively, "Defendants' Publications").

27.     Defendants own, operate, and manage the publication Logistics Management ("LM") and the website LOGISTICSMGMT.COM (the "LM Website"). The LM Website is registered to "EH Publishing, Inc." and the bottom of each page on the LM Website states "© Copyright 2018 Peerless Media LLC, a division of EH Publishing, Inc."

28.     Defendants own, operate, and manage the publication Modern Materials Handling ("MMH") and the website MMH.COM (the "MMH Website"). The MMH Website is registered to "EH Publishing, Inc." and the bottom of each page on the MMH Website states "© Copyright 2018 Peerless Media LLC, a division of EH Publishing, Inc."

29.     Defendants own, operate, and manage the publication Supply Chain Management Review ("SCMR") and the website SCMR.COM (the "SCMR Website"). The SCMR Website is registered to "EH Publishing, Inc." and the bottom of each page on the SCMR Website states "© Copyright 2018 Peerless Media LLC, a division of EH Publishing, Inc."

30.     Defendants own, operate, and manage the publication Supply Chain 24/7 ("SC247") and the website SUPPLYCHAIN247.COM (the "SC247 Website"). The SC247 Website is registered to "EH Publishing - Peerless Media" and the bottom of each page on the SC247 Website states "© SupplyChain247.com is owned and produced by Peerless Media, LLC., a Division of EH Publishing, Inc. All rights reserved."

31.     Defendants own, operate, and manage the publication Material Handling Product News, also known as Material Handling 24/7 ("MHPN" or "MH247"), and the websites: MHPN.COM (the "MHPN Website"), and MATERIALHANDLING247.COM (the "MH247 Website"). The MHPN Website is registered to "EH Publishing, Inc." and the bottom of each page on the MHPN Website states "© Copyright 2018 Peerless Media LLC, a division of EH Publishing, Inc." The MH247 Website is registered to "Domains By Proxy, LLC" (a private registration proxy service), and the bottom of each page on the MH247 Website states "© Copyright 2018 Peerless Media LLC, a division of EH Publishing, Inc."

32.     Defendants conduct significant and meaningful business within Minnesota.

33.     Defendants' Publications are offered as subscriptions to be mailed to consumers and businesses in Minnesota; some of which are paid subscriptions. By way of example, the SCMR Website offers a $109-per-year digital subscription,[1] and Defendants issued a report

---

[1]     *See* Paid Subscription Request, SUPPLY CHAIN MANAGEMENT REVIEW, available at https://peerless.omeda.com/scmr/r-paid.do (last accessed April 10, 2018) (offering paid subscriptions from $109 to $269 per year).

identifying that for its May–June 2017 issue, SCMR had 301 print and 100 digital subscribers in Minnesota.

34.     Defendants sell advertising on each website for Defendants' Publications in Minnesota. This advertising runs next to, and along with, Defendants' publication of the Photograph in Minnesota. Defendants profit through this advertising revenue.

**III.     Defendants' Acts of Infringement**

35.     Through Defendants' use, display, publication, and distribution of the Photograph on the websites for Defendants' Publications, Defendants infringed on Plaintiff's copyright.

36.     Defendants uploaded the Photograph to their web hosting provider, websites, content management system, and/or web servers on or about September 25, 2017.

**(a)     Defendants' Infringements on the LM Website**

37.     On or about September 25, 2017, Defendants published an article on the LM Website, which included the Photograph. This article is accessible at the LM Website URL https://www.logisticsmgmt.com/article/port_of_san_francisco_brings_new_talent_to_cargo_man agement. A true and correct copy of this article, as an example of some of Defendants' infringing acts, is attached hereto as **Exhibit C**.

38.     On or about November 6, 2017, Defendants published an article on the LM Website, which included the Photograph. This article is accessible at the LM Website URL https://www.logisticsmgmt.com/article/with_little_fanfare_port_of_oakland_addresses_clean_air _issue.

39.     On or about February 15, 2018, Defendants published an article on the LM Website, which included the Photograph. This article is accessible at the LM Website URL

https://www.logisticsmgmt.com/article/port_of_oakland_reports_another_significant_jump_in_e
xport_volume.

(b)       **Defendants' Infringements on the MMH Website**

40.       On or about September 25, 2017, Defendants published an article on the MMH

Website, which included the Photograph. This article is accessible at the MMH Website URL

https://www.mmh.com/article/port_of_san_francisco_brings_new_talent_to_cargo_management.

41.       On or about November 6, 2017, Defendants published an article on the MMH

Website, which included the Photograph. This article is accessible at the MMH Website URL

https://www.mmh.com/article/with_little_fanfare_port_of_oakland_addresses_clean_air_issue.

42.       On or about February 15, 2018, Defendants published an article on the MMH

Website, which included the Photograph. This article is accessible at the MMH Website URL

https://www.mmh.com/article/port_of_oakland_reports_another_significant_jump_in_export_vo
lume.

(c)       **Defendants' Infringements on the SCMR Website**

43.       On or about September 25, 2017, Defendants published an article on the SCMR

Website, which included the Photograph. This article is accessible at the SCMR Website URL

http://www.scmr.com/article/port_of_san_francisco_brings_new_talent_to_cargo_management.

44.       On or about November 6, 2017, Defendants published an article on the SCMR

Website, which included the Photograph. This article is accessible at the SCMR Website URL

http://www.scmr.com/article/with_little_fanfare_port_of_oakland_addresses_clean_air_issue.

45.       On or about February 15, 2018, Defendants published an article on the SCMR

Website, which included the Photograph. This article is accessible at the SCMR Website URL

http://www.scmr.com/article/port_of_oakland_reports_another_significant_jump_in_export_vol ume.

(d)     **Defendants' Infringements on the SC247 Website**

46.     On or about September 25, 2017, Defendants published an article on the LM Website, which included the Photograph. This article is accessible at the LM Website URL https://www.supplychain247.com/article/port_of_san_francisco_brings_new_talent_to_cargo_m anagement.

47.     On or about November 6, 2017, Defendants published an article on the LM Website, which included the Photograph. This article is accessible at the LM Website URL https://www.supplychain247.com/article/with_little_fanfare_port_of_oakland_addresses_clean_a ir_issue.

48.     On or about February 15, 2018, Defendants published an article on the LM Website, which included the Photograph. This article is accessible at the LM Website URL https://www.supplychain247.com/article/port_of_oakland_reports_another_significant_jump_in_ export_volume.

(e)     **Defendants' Infringements on the MHPN Website and/or MH247 Website**

49.     At some time after Defendants began their infringement of the Photograph and prior to filing of this Complaint, Defendants changed the MHPN Website to be the MH247 Website, redirecting all traffic from MHPN.COM to MATERIALHANDLING247.COM.

50.     On or about September 25, 2017, Defendants published an article on the MHPN Website and/or MH247 Website, which included the Photograph. This article was or is accessible at the MHPN Website URL https://www.mhpn.com/article/port_of_san_francisco_brings_new_talent_to_cargo_management     and/or     the     MH247     Website     URL

https://www.materialhandling247.com/article/port_of_san_francisco_brings_new_talent_to_cargo_management.

51.     On or about November 6, 2017, Defendants published an article on the MHPN Website and/or MH247 Website, which included the Photograph. This article was or is accessible at the MHPN Website URL https://www.mhpn.com/article/with_little_fanfare_port_of_oakland_addresses_clean_air_issue and/or the MH247 Website URL https://www.materialhandling247.com/article/with_little_fanfare_port_of_oakland_addresses_clean_air_issue. A true and correct copy of this article, as an example of some of Defendants' infringing acts, is attached hereto as **Exhibit D**.

52.     On or about February 15, 2018, Defendants published an article on the MHPN Website and/or MH247 Website, which included the Photograph. This article was or is accessible at the MHPN Website URL https://www.mhpn.com/article/port_of_oakland_reports_another_significant_jump_in_export_volume and/or the MH247 Website URL https://www.materialhandling247.com/article/port_of_oakland_reports_another_significant_jump_in_export_volume.

    **(f)     Defendants' Other Infringing Acts**

53.     In addition to the foregoing, Defendants also selected and displayed the Photograph in such a manner that the Photograph was displayed in search engine results pages, such as Google, an example of which appears herein:

54.     In addition to the foregoing, Defendants also configured each article Defendants used the Photograph on to use and display the Photograph as the "share image," causing social media networks such as Facebook to display the Photograph along with Defendants' articles, an example of which appears herein:



55.     Each of Defendants' articles using and displaying the Photograph included links to share those articles on Twitter, Facebook, LinkedIn, and Google+, which would result in third parties posting the Photograph on their social media profiles along with a link to Defendants' articles.

**(g)     Defendants' Infringement Was Flagrantly Willful**

56.     Defendants' unlawful acquisition of the Photograph involved Defendants observing, reading, and bypassing explicit copyright notices and copyright management information.

57.     On February 27, 2018, Plaintiff mailed a letter (the "Letter") to Defendants that, *inter alia*, informed Defendants that Plaintiff owns the Photograph and the copyright Registration, that Defendants do not have a license for the Photograph, and that Defendants' use of the Photograph constitutes copyright infringement. Plaintiff specifically demanded that Defendants cease and desist their infringement through the immediate removal of the Photograph from their websites. The Letter identified several URLs of Defendants' Publications in which Defendants were displaying the Photograph on or in.

58.     On March 7, 2018, Christine Duffy, Chief Financial Officer and Chief Operating Officer of Defendant EH responded, falsely stating that Defendants were allowed to use the Photograph because they found it on Google.

59.     Duffy forwarded Plaintiff's counsel a conversation showing that it employs a pattern or practice of copyright infringement.

60.     In one email, Brian Ceraolo, Defendant Peerless' President, admits Defendants "get hit with these from time to time," referring to copyright infringement claims.

61.     In another email, Duffy told her colleagues that "As a general rule I don't respond to these claims, at least for an initial period, and in many instances they just go away."

62.     Defendants refused to remove the Photograph from any of their articles.

63.     More than a month after Defendants were directly informed of their infringement and instructed to remove the Photograph from their websites, Defendants continue to display, use, and keep published the Photograph on their websites.

**(h)    Defendants' Infringement, Generally**

64.     Defendants had no license to use the Photograph.

65.     Defendants had no right to use the Photograph.

66.     Defendants did not remit any fee to use the Photograph.

67.     Defendants did not contact Plaintiff or the Photographer at any time prior to using the Photograph.

68.     Defendants' use of the Photograph was for commercial, advertising, and sales purposes.

69.     Defendants displayed and published the Photograph for the purposes of enhancing and creating appeal for their publications, articles, and content, and to increase subscriptions and advertising revenue.

70.     Some of Defendants' articles which used or displayed the Photograph included an interstitial advertisement, which causes an advertisement to be displayed before content, including the Photograph is displayed, on an initial visit to the site or article.

71.     Defendants took no steps or actions toward obtaining, meeting the conditions of, or to comply with, any license to use the Photograph.

72.     Defendants did not provide any attribution for any of its uses of the Photograph.

73.     Defendants did not provide credit or attribution to the Photographer for the Photograph.

74.     Defendants did not include the Photographer's name or Plaintiff's name anywhere in or on any of its publications, or anywhere in or on the websites for Defendants' Publications.

75.     A person or entity working for or on behalf of Defendants copied and uploaded the Photograph to the website or websites for Defendants' Publications.

76.     Defendants removed copyright management information in their publication, use, and distribution of the Photograph.

77.     Defendants' removal of, and falsification of, copyright management information was done intentionally.

78.     Defendants collect data pertinent to how many times the infringed Photograph was displayed, and how much revenue Defendants have earned in connection with their infringement of the Photograph. By way of example, Defendants have installed code from, and use services from, Google Analytics, New Relic, 24/7 Media, Rapleaf, and LiveRamp, and also

use the content distribution network and caching service Cloudflare. These services collect individualized and statistical data on website visitors, advertising impressions, user actions and subscriptions, and more.

79.     Defendants' web server(s) for each website for Defendants' Publications maintain logs or audit trails of when and how often content, including the infringed Photograph, were displayed, viewed, and accessed.

80.     Defendants' privacy policy states that Defendants collect the IP address of each visitor to their website, and use "technology to automatically record other information that identifies your computer and tracks your behavior." Defendants have retained and maintained this data.

81.     Defendants use a content management system for each of the websites for Defendants' Publications. This content management system maintains a database or logs of historical records of content uploaded, created, and published on the websites, including the Photograph, and articles containing the Photograph. This database, including backups or snapshots of the same, includes audit detail pertaining to which account uploaded the Photograph and the timestamp of the uploading of the Photograph, and the use of the Photograph.

82.     Defendants use the ExpressionEngine content management system for the websites for Defendants' Publications.

83.     All of Defendants' individual acts of copyright infringement, removal of copyright management information, and falsification of copyright infringement as pleaded herein occurred after the effective date of the Registration.

**CAUSES OF ACTION**

**Count One**
**Copyright Infringement (17 U.S.C. § 501)**

84.     Plaintiff incorporates by reference the prior allegations.

85.     Defendants' conduct is in violation of copyright law, including the U.S. Copyright Act, and the exclusive rights held by Plaintiff.

86.     Defendants' infringement of these rights was and is willful.

87.     As a result of Defendants' individual and collective acts of copyright infringement, and the foregoing allegations, Plaintiff has suffered damages in an amount to be determined at trial.

88.     Plaintiff is entitled to statutory damages under the Copyright Act at their election.

**Count Two**
**Integrity of Copyright Management Information (17 U.S.C. §§ 1202-1203)**

89.     Plaintiff incorporates by reference the prior allegations.

90.     Defendants' conduct is in violation of United States copyright law and the exclusive rights held by Plaintiff.

91.     Defendants' removal of copyright management information is in violation of law and of Plaintiff's rights.

92.     Defendants' placement of their copyright notices on or near Plaintiff's photographs is in violation of law and of Plaintiff's rights.

93.     Defendants' failure to display, falsification, and removal of copyright management information was willful and intentional.

94.     As a result of Defendants' failure to display, falsification, and removal of copyright management information, and the foregoing allegations, Plaintiff has suffered damages in an amount to be determined at trial.

95.     Plaintiff is entitled to statutory damages under the Copyright Act at their election.

## JURY TRIAL DEMAND

96.     Plaintiff demands trial by jury on all issues so triable.

## DEMAND FOR RELIEF

97.     WHEREFORE, Plaintiff requests judgment be entered in favor of Plaintiff, and against Defendants, as follows:

A.      Judgment in favor of Plaintiff against Defendants for each and every act of copyright infringement and removal of copyright management information;

B.      An award of statutory damages of $30,000 for each infringement of each of the copyrighted works pursuant to 17 U.S.C. §§ 504-505;

C.      A finding that Defendant's conduct was committed willfully, and that Defendant be ordered to pay an award of increased statutory damages of $150,000 for each infringement of each of the copyrighted works;

D.      An award of actual and/or statutory damages, at Plaintiff's election, for the removal and alteration of copyright management information pursuant to 17 U.S.C. § 1202.

E.      Issuance of a permanent injunction barring Defendant's continued infringement of Plaintiff's copyrights and Defendant's continued removal and modification of copyright management information.

F.      An award of Plaintiff's full costs, expenses, and reasonable attorney's fees incurred in this action; and

G.      Such other, different, and further relief as this Court deems just and proper.

Dated:  May 1, 2018                          **BRIGGS AND MORGAN, P.A.**

                                             By:  s/ *Scott M. Flaherty*
                                                 Scott M. Flaherty (#388354)
                                                 Michael M. Sawers (#392437)
                                             2200 IDS Center
                                             80 South Eighth Street
                                             Minneapolis, MN  55402-2157
                                             (612) 977-8400

                                             **ATTORNEYS FOR PLAINTIFF
                                             ITASCA IMAGES, LLC**